# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

BEA J. SOLOMON,

        Petitioner,

v.
                                       Case No. 3:17-cv-264-J-32JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et. al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner, Bea J. Solomon, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody.[1] See Doc. 1. He challenges a state court (Duval County, Florida) judgment of conviction for aggravated assault on a law enforcement officer (count one) and fleeing or attempting to elude a law enforcement officer (siren and lights activated with high speed or reckless driving) (count two). He is currently serving a fifteen-year-term of incarceration with a three-year minimum mandatory for count one and a consecutive ten-year term of incarceration for count two. Respondents filed a Response, see Doc. 16 (Resp.), and a Supplemental Response, see Doc. 18 (Supp.

_____

[1] Petitioner also filed an "Amended Page 10" to his Petition. See Doc. 5-1.

Resp).[2] Petitioner filed a Reply, see Doc. 19, and an Amended Reply, see Doc. 20.[3]  This

case is ripe for review.

## II. Governing Legal Principals

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a

state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic

& Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct.

1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions

as a guard against extreme malfunctions in the state criminal justice systems, and not

as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court

decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v.

Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need

not issue an opinion explaining its rationale in order for the state court's decision to

qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100

(2011). Where the state court's adjudication on the merits is unaccompanied by an

explanation,

> the federal court should "look through" the unexplained
> decision to the last related state-court decision that does
> provide a relevant rationale. It should then presume that

---

[2] Attached to the Response are Exhibits A through O, see Docs. 16-1 through 16-6, and attached to the Supplemental Response are Exhibits P through Q, see Doc. 18-1. The Court cites to all Respondents Exhibits as "Resp. Ex."

[3] In his Reply and his Amended Reply, Petitioner only replies to Respondents' response on Ground One (B), Ground One (Cumulative Error), and Ground Five of the Petition. See generally Docs. 19, 20.

the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness.");

> Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## A. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme

> court with powers of discretionary review), thereby alerting
> that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>,
> at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S.
> 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a
> state prisoner's conviction and sentence are guided by rules
> designed to ensure that state-court judgments are accorded
> the finality and respect necessary to preserve the integrity
> of legal proceedings within our system of federalism. These
> rules include the doctrine of procedural default, under
> which a federal court will not review the merits of claims,
> including constitutional claims, that a state court declined
> to hear because the prisoner failed to abide by a state
> procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[4] <u>supra</u>, at 747–748,
> 111 S. Ct. 2546; <u>Sykes</u>,[5] <u>supra</u>, at 84–85, 97 S. Ct. 2497. A
> state court's invocation of a procedural rule to deny a
> prisoner's claims precludes federal review of the claims if,
> among other requisites, the state procedural rule is a
> nonfederal ground adequate to support the judgment and
> the rule is firmly established and consistently followed. <u>See</u>,
> <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–
> 1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, -
> -, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The
> doctrine barring procedurally defaulted claims from being
> heard is not without exceptions. A prisoner may obtain
> federal review of a defaulted claim by showing cause for the
> default and prejudice from a violation of federal law. <u>See</u>
> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

---

[4] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[5] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[6] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This

---

[6] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

> exception is exceedingly narrow in scope," however, and
> requires proof of actual innocence, not just legal innocence.
> <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. <u>Strickland</u>, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y,

Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III. Analysis

### Ground One

#### (A)

Petitioner argues that trial counsel was ineffective for failing to adequately investigate his case. Doc. 1 at 6-8. In support of this allegation, Petitioner sets forth five sub-claims. See id. at 7-8. According to Petitioner, had trial counsel properly investigated his case, she would have discovered: (1) the state's crime scene photos depicted the wrong street where the aggravated assault occurred; (2) there was no "small tree" at the crime scene; (3) there was no wrought-iron gate blocking the driver's lane; (4) Officer Jonathan Fisette's trial testimony regarding his sirens not being heard on the video footage was inconsistent to prior testimony; and (5) trial counsel should have confirmed that Fisette did not have a camera inside his police vehicle, because the presence of a camera would have revealed that Petitioner did not attempt to hit Fisette. Id.

Petitioner raised these sub-claims in ground one of his Florida Rule of Criminal Procedure 3.850 motion for postconviction relief.[7] Resp. Ex. K at 161-65. The trial court summarily denied the allegations in pertinent part:

> In Ground One, Defendant contends counsel was ineffective for failing to adequately investigate and prepare. Defendant asserts seven sub-claims alleging that had

---

[7] In his Rule 3.850 motion, Petitioner raised two additional sub-claims that are not raised in his Petition. See Resp. Ex. K at 164.

counsel adequately investigated and prepared, she would have discovered specified "exculpatory evidence."

Defendant's first three sub-claims allege the crime scene photographs and witness testimony describing the crime scene do not accurately depict the crime scene. Specifically, Defendant alleges the photographs and testimony describe an area located at the intersection of Third Street and Davis Street in Jacksonville. Defendant asserts the incident took place at the intersection of Fourth Street and Davis Street. Defendant argues that this distinction is important because the small tree and wrought iron gate depicted in the photographs and described in testimony are not present at Fourth Street and Davis Street. Defendant opines that had counsel discovered this purported fact and presented the information to the jury, the outcome of his trial would have been different. Unfortunately for Defendant, the record refutes his claims.

At trial, the State presented testimony of a single witness, Officer Fisette. Officer Fisette testified he first encountered Defendant as Defendant drove through Officer Fisette's patrol zone. (Ex. D at 160-64.) Officer Fisette further testified a fellow officer informed him Defendant's license plate was not illuminated as required by law. (Ex. D at 160.) Officer Fisette testified he followed Defendant while attempting to gather information on the car and its occupants by conducting a records search on the car's license plate number. (Ex. D at 164.) Officer Fisette testified he first attempted to initiate a traffic stop as Defendant drove into an apartment complex. (Ex. D at 168.) Officer Fisette testified the complex has several entrances and encompasses several city blocks. (Ex. D at 168, 196-98, 200, 212-15.)

Officer Fisette testified the Aggravated Assault on a Law Enforcement Officer occurred at the Third Street entrance to the complex. (Ex. D at 168-69.) Specifically, Officer Fisette testified Defendant stopped his vehicle at a wrought iron gate located a short distance inside the Third Street entrance. (Ex. D at 168-69, 173.) Officer Fisette then testified he activated his patrol car's lights and sirens, exited his patrol car, and directed Defendant to exit his own vehicle. (Ex. D at 173-76.) Officer Fisette further testified

Defendant fled from the scene by attempting to hit Officer Fisette with his car. (Ex. D at 176-80.) Officer Fisette also testified Defendant exited the Third Street entrance and proceeded to flee north and then east around the perimeter of the apartment complex. (Ex. D at 180-84, 219-220.)

Officer Fisette testified he pursued Defendant around the perimeter of the complex before Defendant abandoned his vehicle near the Fourth Street entrance to the same complex. (Ex. D at 183.) The State introduced photographs of the Third Street entrance, the wrought iron gate, the small tree and the parking area located at the Third Street entrance. (Ex. D at 168-80.) Officer Fisette clearly identified each of these photographs as depicting the scene of the Aggravated Assault. (Ex. D at 170-178.) Using a map presented by the State, Officer Fisette also described the path of Defendant's flight as exiting the Third Street entrance, traveling around the perimeter of the complex, and ending near the Fourth Street entrance where Defendant abandoned his vehicle. (Ex. D at 168-80.) Officer Fisette's testimony as a whole, [sic] the record clearly refutes Defendant's allegation.

Additionally, the State introduced a recording of Officer Fisette's dispatch reports. (Ex. D at 188.) The recording is a real-time account of Officer Fisette's description of the event. (Ex. D at 188-91.) In that recording, Officer Fisette describes Defendant's attempt to hit him and tells the dispatcher he is located at Third Street. (Ex. D at 189.) Officer Fisette also tells the dispatcher that Defendant exited the complex turns north and then east passing the second entrance to the complex. (Ex. D at 189.)

Accordingly, the record, taken as a whole, explains any purported discrepancy in the location of the Aggravated Assault. Defendant contends the State engaged in a complex conspiracy with Officer Fisette to wrongfully prosecute and convict him. Defendant urges the Court to accept his conspiracy theory based substantially on the lone, minor discrepancy listing two different addresses as the location of the incident. Contrary to Defendant's contention, Officer Fisette's testimony at trial coincides with the photographic evidence offered by the State. Notably, both listed addresses coincide with Officer Fisette's call to

dispatch describing Defendant's path of travel around the apartment complex in real-time. As detailed above, Officer Fisette's trial testimony is consistent with his real-time description. Any discrepancy in his deposition or the arrest and booking report is explained by the multiple apartment complex's multiple entrances.

Moreover, Defendant's trial counsel conducted a lengthy cross examination questioning Officer Fisette regarding the crime scene. (Ex. D at 194-218.) Counsel also used Officer Fisette's prior deposition to expose certain inconsistencies in his testimony. (Ex. D at 197-99.) Accordingly, it is clear from the record counsel thoroughly investigated the facts in Defendant's case and adequately prepared to challenge the State's case, including the State's photographic evidence and testimony depicting the crime scene. As such, Defendant fails to demonstrate counsel was deficient. Defendant is not entitled to relief on his first three sub-claims.

Defendant's fourth sub-claim in Ground One alleges counsel should have investigated Officer Fisette's patrol vehicle to determine whether Officer Fisette's statements regarding his siren's function were accurate. Specifically, Defendant alleges Officer Fisette's testimony at trial contradicts prior testimony given during the officer's deposition. "Postconviction relief cannot be based on speculation or possibility." Valle v. State, 70 So. 3d 530, 550 (Fla. 2011) (quoting Maharaj v. State, 778 So. 2d 944, 951 (Fla. 2000)).

Here, Defendant's allegations are too speculative to warrant relief in a postconviction motion. Defendant merely speculates that an investigation of Officer Fisette's car would provide evidence counsel could have used to further impeach Officer Fisette. Furthermore, counsel did question Officer Fisette regarding the use of his sirens and attempted to impeach Officer Fisette with his prior deposition. (Ex. D at 197-99, 217.) Moreover, even assuming Defendant's allegations are true, Defendant cannot demonstrate prejudice. Assuming, arguendo, that Officer Fisette's sirens do not function as he described, this fact does not exculpate Defendant. Rather, it would merely provide another means of impeaching Officer Fisette. As stated, counsel conducted

an extensive cross examination and attempted to impeach Officer Fisette. Counsel is not deficient merely because her arguments failed.

Defendant's fifth sub-claim in Ground One alleges counsel should have investigated Officer Fisette's patrol vehicle to determine whether it was equipped with a dashboard camera. This claim is wholly speculative. The State filed two discovery exhibits. Neither includes any indication that dashboard video exists. Accordingly, Defendant can only speculate that Officer Fisette's vehicle was equipped with a camera and further speculate that any video would actually be exculpatory.

. . .

Accordingly, none of Defendant's sub-claims in Ground One demonstrate counsel failed to discover exculpatory evidence. Moreover, none of Defendant's sub-claims in Ground One demonstrate a reasonable probability of a different outcome had counsel discovered the purportedly exculpatory evidence.

To the extent Defendant seeks to challenge the sufficiency of the evidence presented against him, such a claim is procedurally barred. See Johnson v. State, 985 So. 2d 1215, 1215(Fla. 1st DCA 2008) (finding claim alleging "insufficiency of the evidence to prove escape . . . [is] not cognizable in a collateral postconviction motion"); Betts v. State, 792 So. 2d 589, 590 (Fla. 1st DCA 2001) (citing Jackson v. State, 640 So. 2d 1173 (Fla. 2d DCA 1994)) (stating, with respect to defendant's postconviction challenge to factual basis and sufficiency of evidence presented against him, "such claims cannot be raised in a Rule 3.850 motion").

Lastly, Defendant raised substantially similar claims on direct appeal in case number 1D11-5499. The law of the case doctrine dictates that questions of law decided on appeal must "govern the case in the same court and the trial court, through all subsequent stages of the proceedings." State v. McBride, 848 So. 2d 287, 289-90 (Fla. 2003). Furthermore, a defendant cannot avoid the law of the case doctrine by "[b]y packaging the same legal issue in a

> different form or format." <u>Hogan v. State</u>, 894 So. 2d 1070,
> 1071 (Fla. 5th DCA 2005). On June 8, 2012, Court appointed
> counsel filed an <u>Anders [v. California</u>, 386 U.S. 738 (1967),]
> brief on behalf of Defendant requesting the Court allow
> Defendant an opportunity to file his own initial brief. (Ex.
> F.) Defendant filed an initial brief on July 20, 2012. (Ex. G.)
> In his brief, Defendant raised substantially similar issues
> challenging Officer Fissette's testimony and the State's
> photographic evidence of the crime scene. The First District
> Court of Appeal affirmed Defendant's convictions and
> sentences through a Mandate issued on February 3, 2013.
> (Ex. C.) Thus, Defendant cannot be allowed to repackage the
> same legal issues in a different format. Accordingly,
> Defendant is not entitled to relief on Ground One.

Resp. Ex. K at 231-37. The First District Court of Appeal per curiam affirmed the trial

court's denial without a written opinion. Resp. Ex. N. To the extent that the First DCA

affirmed the trial court's denial on the merits, the Court will address the claim in

accordance with the deferential standard for federal court review of state court

adjudications.

The trial court adequately summarized the evidence adduced at trial. The state

presented one witness: Officer Johnathan Fisette. Resp. Ex. C at 158-224. Fisette

testified that he was on patrol the night of the incident and was advised via radio

transmission that Petitioner was driving a vehicle with a faulty taillight. <u>Id.</u> at 160-

62. Fisette observed Petitioner driving southbound, so he began following Petitioner

and attempted to read Petitioner's license plate. <u>Id.</u> at 162-64, 170. While following

Petitioner, Fisette observed Petitioner run a stop sign and accelerate at a high rate of

speed (at least twice the speed limit) through a residential area, and then saw

Petitioner run a red light at a large intersection at 8th Street and Davis Street. <u>Id.</u> at

164-67. Petitioner continued southbound on Davis and eventually turned left at 3rd

Street into an apartment complex. Id. Petitioner drove toward the back of the apartment complex until he stopped his vehicle before a wrought iron gate. Id. at 168. Fisette followed Petitioner into the apartment complex, parked his marked patrol car behind Petitioner at the wrought iron gate, and activated his sirens to conduct a "felony takedown."[8] Id. at 171-72. At that time, Fisette noticed that there was a second passenger in the vehicle with Petitioner.

Fisette got out of his patrol car, identified himself over the PA system, and asked Petitioner to put his hands out of his window. Id. at 172. While Fisette was giving verbal orders, Petitioner turned to face him and made eye contact with Fisette, allowing Fisette to clearly observe Petitioner's face. Id. at 174. After refusing to abide by Fisette's numerous demands, Petitioner put his vehicle into gear and made a three-point turn, positioning the vehicle to where it was directly facing Fisette. Id. at 175-76. Petitioner then accelerated toward Fisette forcing Fisette to jump out of the way because he feared Petitioner would hit him with his vehicle. Id. Petitioner then sped out of the apartment complex, went northbound on Davis Street, and made a right-hand turn onto 4th Street. Id. at 183. While on 4th Street, Petitioner's vehicle was rendered disabled[9] and Petitioner and the passenger abandoned the car in a large parking lot. Id. at 184. Petitioner and the passenger then fled on foot. Id. at 185-86. Fisette pursued Petitioner on foot and followed him into another entrance of the

---

[8] A "felony takedown" is an unknown-risk traffic stop conducted to remove all the occupants from the vehicle and detain them. Resp. Ex. C at 172.

[9] After turning onto 4th Street, Petitioner hit a curb rendering his vehicle disabled. Resp. Ex. C at 199.

apartment complex. Id. at 185-86. Fisette then cornered Petitioner in a stairwell and deployed his taser. Id. at 187. Fisette read Petitioner his Miranda rights, and thereafter, Petitioner explained to Fisette that he did not try to hit him, but that he was running from Fisette because his license was suspended. Id. at 193.

During cross-examination, Fisette explained that the subject apartment complex where Petitioner initially pulled into with the wrought iron gate and the complex where Petitioner was apprehended are on the same block, back to back and adjacent to one another. Id. at 213-14. As the trial court noted, trial counsel attempted to discredit Fisette's trial testimony by cross examining him about his delay in initiating a traffic stop and the condition and operation of his patrol car's sirens. See generally id. at 194-217. Despite trial counsel's efforts, the jury found Petitioner guilty based on Fisette's extensive eyewitness testimony.

Upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claim is neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground One (A) is due to be denied.

**(B)**

Petitioner argues that trial counsel was ineffective for failing to interview or call Timothy Brown, the other passenger in the vehicle, as a defense witness at trial. Doc. 1 at 9; Doc. 19 at 2-3. According to Petitioner, Brown would have testified that Petitioner was not attempting to hit Fisette, but was merely attempting to escape

capture. Petitioner further asserts that Brown would have testified that Fisette did not activate his sirens while attempting to stop Petitioner.

Petitioner raised this issue as ground two of his Rule 3.850 motion. Resp. Ex. K at 165-66. The trial court summarily denied the claim as follows:

> In Ground Two, Defendant contends counsel was ineffective for failing to call an exculpatory witness. Specifically, Defendant alleges Mr. Brown, a passenger in his car during the incident, would testify Defendant did not attempt to run over Officer Fisette. Defendant further alleges Mr. Brown would testify Officer Fisette was not operating his lights and sirens during the incident. Defendant also maintains Mr. Brown was available and willing to testify at trial. Defendant asserts the outcome of his trial would have been different had counsel called Mr. Brown to testify. [FN4 The Court notes Defendant describes Mr. Brown as a co-defendant. However, there is nothing in the record to indicate the instant case involves more than one Defendant.]

> The Court finds these allegations to be without merit. "A Rule 3.850 motion cannot be used to go behind representations the defendant made to the trial court." See Kelley v. State, 109 So. 3d 811, 812-13 (Fla. 1st DCA 2013); McIndoo v. State, 98 So. 3d 640, 641-42 (Fla. 4th DCA 2012) (affirming denial of relief where defendant testified he did not wish to call any witnesses). In the instant case, the Court granted Defendant a brief recess following the close of the State's case to allow counsel and Defendant to discuss the strategy in Defendant's case. (Ex. D at 233-34.) Following that recess, Defendant testified that he did not want to call any witnesses or present any evidence. (Ex. D at 233-34.) Defendant was given the opportunity to discuss his case and swore to the Court he did not wish to call witnesses or present evidence. Defendant cannot now seek to go behind his sworn testimony merely because he is dissatisfied with the outcome of his trial. Accordingly, Defendant is not entitled to relief on Ground Two.

Resp. Ex. K at 237-38. The First DCA per curiam affirmed the trial court's denial

without a written opinion. Resp. Ex. N. To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

As an initial matter, the record belies Petitioner's assertion that Brown was a viable witness at the time of trial. When the trial court directly asked Petitioner during trial if there were any witnesses Petitioner wanted trial counsel to call during trial, Petitioner responded "No." Resp. Ex. C at 234. Petitioner also advised the trial court that there was no other evidence that he wished trial counsel to present. Id. at 235. Further, Petitioner cannot demonstrate that testimony from Brown would have reasonably affected his trial. Notably, it would not overcome the weight of evidence that while Fisette, who was driving a marked patrol car and wearing a police uniform, used his PA system to order Petitioner to put his hands out of the window and exit the car, and after Petitioner turned and made eye contact with Fisette, Petitioner refused to follow Fisette's orders. Petitioner then turned his vehicle around to directly face Fisette. Fisette testified that he was standing approximately ten feet away from his vehicle and the area on the other side of the vehicle "was wide open. You could have fit a full-sized pickup through there easily." Id. at 221. However, instead of driving his vehicle through that open area, Petitioner drove directly toward Fisette and sped away so quickly that his tires squealed and his car kicked up dirt. Id. at 179-80. Any testimony from Brown would also not negate that Petitioner fled on foot when his vehicle was disabled or that Petitioner admitted to Fisette that he ran because he had a suspended license. Petitioner does not deny that he was driving the vehicle or that

he was involved in this incident. Trial counsel argued that the evidence only showed "[a]t best [that] the officer has a driver that has driven past him." Id. at 264. Nevertheless, despite this version of events, the jury found that Petitioner committed an aggravated assault upon a law enforcement officer. As such, Petitioner cannot demonstrate that but for trial counsel's alleged error, the outcome of his trial would have been different.

Upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claim is neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground One (B) is due to be denied.

### (C)

Petitioner asserts that trial counsel was ineffective for failing to adequately impeach Fisette with his prior inconsistent statements and evidence that Fisette's description of the crime scene was inaccurate. See Doc. 1 at 10-15. In support of this claim, Petitioner highlights seven points that trial counsel should have elicited when impeaching Fisette: (1) the incident actually occurred on 4th Street where there was nothing (small tree or wrought iron gate) that impeded Petitioner's driving; (2) that Fisette's trial testimony regarding the distance between him and his patrol car when Petitioner drove towards him was inconsistent with deposition testimony; (3) during his deposition, Fisette testified that he was initially following Petitioner because Petitioner had just left a known drug house; (4) Fisette could not have seen Petitioner

moving the gear shift; (5) whether Petitioner had the ability to drive through a cul-de-sac rather than directly toward Fisette when he was fleeing; (6) Fisette's testimony that Petitioner ran "several" red lights was false, because there is only one red light on the subject streets that Petitioner drove; and (7) Fisette's testimony that he could not hear Petitioner hit the curb because he was talking on the radio was inconsistent with prior statements. Id.

Petitioner raised identical allegations in ground three of his Rule 3.850 motion. Resp. Ex. K at 166-73. The trial court summarily denied the claims, finding in relevant part:

> In Ground Three, Defendant contends counsel was ineffective for failing to adequately impeach Officer Fisette. Defendant points to seven purported inconsistencies which he alleges counsel should have elicited on cross-examination. Defendant is not entitled to perfect or error free counsel. Teffeteller, 734 So. 2d at 1022 n.14. Counsel cannot be deemed deficient merely because his or her argument failed. Rather, it is Defendant's burden to show counsel's efforts fell below a reasonable professional standard. See Strickland, 466 U.S. at 687.

> Here, Defendant alleges the crime scene photographs and Officer Fisette's description of the crime scene are inaccurate. Defendant asserts counsel should have impeached Officer Fisette by exposing the inaccuracies. As stated supra in Ground One, counsel did question Officer Fisette regarding the scene in an attempt to discredit his testimony. (Ex. D at 194-217, 221-24.) Therefore, Defendant fails to demonstrate counsel was deficient.

> Next, Defendant alleges counsel failed to elicit testimony to show Officer Fisette's traffic stop was pre-textual. Defendant opines that the jury's verdict would have been different, had counsel elicited testimony indicating Officer Fisette detained Defendant because Defendant was observed at a known drug house rather than for traffic

violations. However, counsel had previously worked to keep testimony about Defendant's possible drug use away from the jury. Accordingly, the record indicates it was part of counsel's strategy to avoid challenging the purportedly pre-textual traffic stop. Counsel cannot be deemed deficient for unsuccessful strategic decisions. <u>Bradley</u>, 33 So. 3d at 671. Moreover, Defendant cannot show prejudice. It is unreasonable to believe the jurors would be more sympathetic to Defendant or otherwise alter their verdict had they been informed Officer Fisette stopped Defendant because a police surveillance team observed him at a known drug house.

Defendant also alleges counsel failed to adequately discredit Officer Fisette regarding the location of his car's gear shift and the use of his lights and sirens. The record refutes Defendant's claims. Counsel did question Officer Fisette regarding the gear shift. (Ex. D at 206-09.) Counsel also questioned Officer Fisette regarding his use of lights and sirens. (Ex. D at 196, 212-20.) Counsel also argued on cross-examination that specific aspects of Officer Fisette's testimony were inconsistent. Accordingly, counsel's efforts to discredit or impeach Officer Fisette were not inadequate or unreasonable. As such, Defendant's Motion fails to establish counsel was deficient.

Lastly, as stated <u>supra</u> in Ground One, Defendant raised substantially similar issues in his initial brief on direct appeal. (Ex. G.) The Court finds Defendant's Ground Three is merely an attempt to repackage the underlying factual dispute as an ineffective assistance of counsel claim. As such, the Law of the Case Doctrine impels the Court to deny Defendant relief on Ground Three. Defendant is not entitled to relief on Ground Three.

Resp. Ex. K at 238-40. The First DCA per curiam affirmed the trial court's denial

without a written opinion. Resp. Ex. N. To the extent that the First DCA affirmed the

trial court's denial on the merits, the Court will address the claim in accordance with

the deferential standard for federal court review of state court adjudications.

Here, Petitioner again alleges that the aggravated assault occurred on 4th Street, not 3rd Street. Doc. 1 at 11. However, the record refutes this claim. As mentioned, the aggravated assault occurred in the apartment complex entrance off of 3rd Street and Petitioner was finally apprehended on 4th Street after his car was rendered disabled. Further, a review of the trial transcript shows that trial counsel did attempt to elicit Fisette's prior inconsistent statements, discrepancies in his version of events, and thoroughly attempted to impeach his trial testimony. Resp. Ex. C at 194-217. Also, prior to trial, at the request of trial counsel, the state agreed it would not elicit any testimony that Fisette initially began following Petitioner because Petitioner was seen leaving "a known drug house" that police were surveilling on the night of the incident. Resp. Ex. B at 5. However, the state explained that it would attempt to present such evidence if Petitioner opened the door to an argument that Fisette was engaged in racial profiling when he conducted the initial traffic stop of Petitioner. Id. at 5-6. As such, trial counsel clearly made a strategic decision not to impeach Fisette on this issue.

After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground One (C) is due to be denied.

**(D)**

Petitioner argues that trial counsel was ineffective for failing to object to the state's improper opening and closing arguments. Doc. 1 at 15-19. In support of this assertion, Petitioner cites to ten comments by the prosecutor that purportedly vouched for the credibility of the state's witness, violated Petitioner's right to remain silent, or were statements not supported by evidence. Id.

Petitioner raised these claims in ground four of his Rule 3.850 motion.[10] Resp. Ex. K at 174-77. The trial court summarily denied this ground, finding in relevant part:

> In Ground Four, Defendant contends counsel was ineffective for failing to object to improper comments from the State. Defendant identifies eleven specific "false and illegal" statements and insists the jury would have disregarded the statements had counsel objected to them.
>
> "Attorneys are permitted wide latitude in closing arguments but are not permitted to make improper argument." Merck v. State, 975 So. 2d 1054, 1061 (Fla. 2007) (citing Gore v. State, 719 So. 2d 1197, 1200 (Fla. 1998)). "Closing argument is an opportunity for counsel to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence." Id. at 1061. In order to demonstrate prejudice in the post-conviction context, Defendant must show that the improper comments undermine confidence in the outcome of the trial. See Brown v. State, 846 So. 2d 1114, 1122 (Fla. 2003). Counsel is not deficient for failing to make a meritless objection. Lugo v. State, 2 So. 3d 1, 21 (Fla. 2008). Additionally, jurors are presumed to follow the court's instructions. Hallford v. Culliver, 459 F.3d 1193, 1204 (11th Cir. 2006) (citing Raulerson v. Wainwright, 753 F.2d 869, 876 (11th Cir. 1985)).

---

[10] In his Rule 3.850 motion, Petitioner challenged eleven comments, one more than the ten he challenges in his Petition. Resp. Ex. K at 174.

Here, the trial court properly instructed the jury that the attorneys were not witnesses and their remarks and arguments are not evidence. (Ex. D at 242-43.) Nonetheless, Defendant cites eleven specific remarks, contending they are improper and there is a reasonable probability the outcome of his trial would have been different had counsel objected to the remarks.

Upon thorough review of the record, viewing the comments in the context of the trial as a whole, and assessing the potential impact on the jury, the Court finds the above-cited comments do not undermine the Court's confidence in the outcome of Defendant's trial.

As detailed in Ground One, Officer Fisette testified he stopped Defendant after observing Defendant driving erratically and violating various traffic laws. (Ex. D at 165-68.) Officer Fisette further testified Defendant drove his car into an apartment complex and became trapped between a security gate and Officer Fisette's patrol car. (Ex. D at 168-173.) Next, Officer Fisette testified he exited his vehicle and conducted a "felony stop" because Defendant failed to heed his initial instructions. (Ex. D at 173.) Officer Fisette testified Defendant attempted to evade arrest by hitting Officer Fisette with his car as he fled the apartment complex.[11] (Ex. D at 176-80.) Lastly, Officer Fisette testified Defendant wrecked his car on curb [sic] and continued to attempt to flee on foot before Officer Fisette finally apprehended him in a nearby apartment complex. (Ex. D at 180-86.) Based upon Officer Fisette's testimony, the Court finds no merit to any claim alleging the State's remarks are not supported by the evidence. Similarly, the Court finds any claims alleging the State misconstrued Officer Fisette's testimony are without merit.

Defendant's claims also allege certain remarks improperly bolstered Officer Fisette's testimony. The Court finds these allegations take the State's remarks out of context. When taken in context, none of the cited remarks

---

[11] The record is clear that Petitioner did not actually hit Fisette, but rather attempted to hit him; and thus, it assumes that this statement is a typographical error.

> fall outside the wide latitude afforded counsel in closing argument.
>
> Lastly, in comment nine <u>supra</u>, Defendant contends the State violated Defendant's right to remain silent. However, the 11th Circuit Court, analyzing this exact phrase, found the phrase does not violate due process. <u>See Williams v. Sec'y. Florida Dept. of Corr.</u>, 2011 WL 2693532, at *7 (M.D. Fla. 2011).[12] Accordingly, Defendant is not entitled to relief on Ground Four.

Resp. Ex. K at 240-42. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. N. To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

A reviewing court must evaluate an allegedly improper comment in the context of both the prosecutor's entire argument and the trial as a whole, because "[c]laims of prosecutorial misconduct are fact-specific inquiries which must be conducted against the backdrop of the entire record." <u>United States v. Hall</u>, 47 F.3d 1091, 1098 (11th Cir. 1995); <u>accord</u> <u>United States v. Young</u>, 470 U.S. 1, 11 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by doing so can it be determined whether the prosecutor's conduct affected the fairness of the trial.").

Petitioner argues that the prosecutor's comments regarding any statements Petitioner made to Fisette after being advised of his <u>Miranda</u> rights were improper, because such implied that Petitioner admitted culpability, <u>see</u> Doc. 1 at 15. He also

---

[12] This citation is clearly to a Middle District of Florida case, not the Eleventh Circuit Court of Appeals case.

argues that the prosecutor's references to the crime scene misled the jury, because the state's crime scene evidence was fake, see id. at 16,18. Upon review of the prosecutor's opening, closing, and rebuttal arguments, see Resp. Ex. C at 141-48, 243-57, 271-78, and in the context of the trial record as a whole, the Court finds that these allegedly improper comments did not affect the fairness of Petitioner's trial. Instead, these comments were merely a summary of the evidence that the state ultimately presented to the jury. Notably, Petitioner never denied that he was involved in the incident and attempted to explain his actions to Fisette after his apprehension. However, Fisette's testimony, supported by the consistent crime scene photos and a recording of Fisette's real-time call to dispatch, show that Petitioner's actions were intentional and showed a consciousness of guilt. Further, Petitioner's challenge to the prosecutor's rebuttal argument that "If I'm wearing a suit in June, I'm guilty. It doesn't matter what color it is" is not a comment on Petitioner's admission of guilt. See id. at 278. Instead, this statement is a direct reference to a hypothetical example the prosecutor used during jury selection to briefly explain the beyond a reasonable doubt standard. Resp. Ex. B at 38-39. As such, counsel was not deficient for failing to object.

Accordingly, upon review of the record, this Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground One (D) is due to be denied.

## (E)

Petitioner asserts that trial counsel was ineffective for failing to file a sufficient motion for judgment of acquittal. Doc. 1 at 19-20. He contends that trial counsel should have argued that the state's crime scene photos depicted the wrong location of the incident and highlighted relevant evidence demonstrating the actual location of the incident. Id. According to Petitioner, these pictures would have disputed the prosecutor's evidence of the fleeing or attempting to elude charge. Id. at 19.

Petitioner raised this claim as ground five of his Rule 3.850 motion. Resp. Ex. K at 178-79. The trial court summarily denied the claim as follows:

> In Ground Five, Defendant contends counsel was ineffective for failing to file an adequate Motion for Judgment of Acquittal. Specifically, Defendant alleges the motion "relied on boilerplate language" and "failed to articulate specific shortcomings . . . [which] were abundantly available." To be entitled to relief on such a claim, Defendant must show that he "may very well have prevailed on a more artfully presented motion." White v. State, 977 So. 2d 680, 681 (Fla. 1st DCA 2008). "Where there is no showing that a motion for judgment of acquittal had a likelihood of success, a movant has not presented a facially sufficient claim of ineffectiveness of counsel." Neal v. State, 854 So. 2d 666, 670 (Fla. 2d DCA 2003) (citation omitted). Additionally, counsel cannot be deemed ineffective for failing to move for a judgment of acquittal where there is sufficient evidence to support the defendant's convictions and the argument would have been meritless. Ferrell v. State, 29 So. 3d 959, 976 (Fla. 2010) (citing Mungin v. State, 932 So. 2d 986, 997 (Fla. 2006)).
>
> Here, contrary to Defendant's specific contention, counsel did not rely on boilerplate language and did not fail to "articulate specific shortcomings." Rather, counsel filed a written, two-page motion detailing Defendant's claims and also attaching twenty-five pages of case law in support of counsel's arguments. (Ex. H.) The motion challenged the

sufficiency of the evidence for Defendant's Aggravated Fleeing or Eluding offense by providing specific examples of purportedly inconsistent facts and arguing the facts were insufficient to sustain a conviction. (Ex. H.) Defendant merely contends that counsel's motion should have re-argued challenges to the testimony and evidence presented at trial. Nothing in Defendant's Ground Five contends the State's case lacked a factual basis sufficient to support a conviction. Rather, Defendant merely argues counsel should have used her motion for judgment of acquittal to further challenge the testimony and evidence presented at trial by highlighting purported inconsistencies in Officer Fissette's testimony and the State's photographic evidence. As such, Defendant's Motion fails to demonstrate a more artfully presented motion had any likelihood of success. Defendant is not entitled to relief on Ground Five.

Resp. Ex. K at 242-43. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. N. To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. The state court correctly noted that the motion for judgment of acquittal that trial counsel filed on behalf of Petitioner was not boilerplate and adequately argued that the evidence failed to establish count two. Resp. Ex. A at 36-62. Petitioner does not demonstrate that but for trial counsel's failure to argue these points, the motion would have been granted or the outcome of his trial would have been different. Upon review of the record, this Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground One (E) is due to be denied.

## (F)

Petitioner argues that trial counsel was ineffective for agreeing to accept and failing to object to false evidence of the crime scene. Doc. 1 at 21-22. He again alleges that Fisette's trial testimony that the incident occurred on 3rd Street while Petitioner was trapped between a wrought-iron gate and Fisette's patrol car was inconsistent with Fisette's deposition testimony that the incident occurred on 4th Street while Petitioner was trapped inside of a cul-de-sac. Id.

Petitioner raised these allegations in ground six of his Rule 3.850 motion, a ground in which Petitioner also challenged trial counsel's failure to object to inaccurate photographic evidence of the crime scene. Resp. Ex. K at 179-82. The trial court summarily denied the claim as follows:

> In Ground Six, Defendant alleges he wasn't permitted to view key photographs entered into evidence. Defendant contends he suffered prejudice because the photographs do not depict the crime scene and had he been permitted to view the photographs, he would have directed counsel to object at trial. During trial, Defendant consented to counsel acting as his eyes in viewing the photographs. (Ex. D at 163-64.) Moreover, there is no reasonable basis to sustain an objection to the photographs. Contrary to Defendant's contention, the photographs accurately depict the scene of [sic] incident. As detailed in Ground One, the scene of the incident is an apartment complex spanning several blocks and including entrances on Third and Fourth streets. Defendant points to his arrest and booking report listing the apartment complex according to its Fourth street address. However, as explained by Officer Fisette's testimony, the incident occurred at the Third street entrance. As such, the photos are an accurate depiction of the crime scene. Even had Defendant viewed these photos at the time of trial, there is nothing he could have done to

> prevent the State from introducing them as evidence. Accordingly, Defendant cannot show counsel was deficient.
>
> To the extent Defendant seeks to challenge the sufficiency of the evidence presented against him, such a claim is procedurally barred. <u>See</u> <u>Johnson</u>, 985 So. 2d at 1215; <u>Betts</u>, 792 So. 2d at 590.

Resp. Ex. K at 243-44. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. N. To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

Here, Petitioner only challenges Fisette's alleged inconsistent deposition and trial testimony regarding the location of Fisette's initial encounter with Petitioner and where the aggravated assault against a law enforcement officer occurred. However, Petitioner does not provide the Court with a copy of Fisette's deposition testimony; thus, it cannot compare it to Fisette's trial testimony. Further, a review of trial counsel's cross-examination of Fisette shows that trial counsel used Fisette's deposition testimony to elicit a number of inconsistent pretrial statements. See Resp. Ex. C at 197-200. Had Fisette actually testified during his deposition testimony that the initial encounter with Petitioner occurred at a completely different location, it is logical that trial counsel would have attempted to elicit that inconsistency, as well. Upon review of the record, this Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an

unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground One (F) is due to be denied.

### (G)

Petitioner contends that trial counsel was ineffective for failing to object to the defective verdict form used for count two – fleeing or attempting to elude a law enforcement officer. Doc. 1 at 22. In support of this claim, he notes that the Information and the jury instruction for count two provided that, during the course of the fleeing, Petitioner either drove at a high speed "or in a manner which demonstrated a wanton disregard for the safety of persons or property." Id.; see also Resp. Ex. A at 18. However, according to Petitioner, the verdict form for count two erroneously provided that, during the course of the fleeing, Petitioner either drove at a high speed or engaged in "reckless driving." Doc. 1 at 22; see also Resp. Ex. A at 89. Petitioner alleges trial counsel should have objected to this discrepancy, because the use of the word "reckless" in the verdict form reduced the burden of proof for count two of the Information.

Petitioner raised this claim in ground seven of his Rule 3.850 motion. Resp. Ex. K at 183-86. The trial court summarily denied the claim in pertinent part:

> In Ground Seven, Defendant contends counsel was ineffective for failing to object to the jury instructions and verdict form. Defendant further contends the jury convicted him of an uncharged offense because the State's Information is inconsistent with the Court's jury instructions and verdict form. Specifically, Defendant argues the inclusion of the term "reckless driving" in the jury instructions and verdict form created confusion amongst the jurors. He further opines that the jury would

not have convicted him had they been required to find he drove with wanton disregard.

"Any person who willfully flees or attempts to elude a law enforcement officer in an authorized law enforcement patrol vehicle, with agency insignia and other jurisdictional markings prominently displayed on the vehicle, with siren and lights activated, and during the course of the fleeing or attempted eluding drives at high speed, or in any manner which demonstrates a wanton disregard for the safety of persons or property, commits a felony of the second degree." § 316.1935(3)(a), Fla. Stat. (2011).

Here, the State's Information charged Defendant with Aggravated Fleeing or Attempting to Elude a Law Enforcement Officer. (Ex. I.) The Information indicated Defendant drove at a high speed or demonstrated a wanton disregard for the safety of others as he fled. (Ex. I.) The Court followed the standard jury instructions for the offense. See In re Standard Jury Instructions in Criminal Cases--Report 2011-01, 73 So. 3d 136, 139 (Fla. 2011)[ ]. The Court instructed the jury that the State must prove four elements for the offense of Aggravated Fleeing or Attempting to Elude a Law Enforcement Officer. The Court's jury instructions included the term "wanton disregard" within the definition of reckless driving. As defined by the Court, wanton disregard is subsumed within the definition of reckless driving. (Exs. D at 282-87; J at 71-75.) The jury's verdict indicates it found Defendant guilty of Aggravated Fleeing or Attempting to Elude a Law Enforcement Officer "with high speed or reckless driving, as charged in the information." (Ex. A.) As such, the jury's finding of reckless driving including within it, a finding of wanton disregard. Accordingly, the record refutes Defendant's claim that the jury instructions created confusion resulting in an improper conviction. Defendant is not entitled to relief on Ground Seven.

Resp. Ex. K at 244-45. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. N. To the extent that the First DCA affirmed the

trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

Florida defines reckless driving as "driv[ing] any vehicle in willful or **wanton disregard for the safety of persons or property**." § 316.192(1), Fla. Stat. (emphasis added). Thus, the use of the term "reckless" on the verdict form instead of the language "wanton disregard for safety of persons or property" is of no consequence. As such, the Court finds that the state court's adjudication of that issue was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

However, even though not raised by Petitioner, the Court finds it important to clarify a technical error regarding count two. Count two of the Information charged Petitioner with violating section 316.1935(3)(a), see Resp. Ex. A at 18, the provision relating to fleeing or attempting to elude a law enforcement officer (siren and lights activated with high speed or reckless driving), which provides:

> (3) Any person who willfully flees or attempts to elude a law enforcement officer in an authorized law enforcement patrol vehicle, with agency insignia and other jurisdictional markings prominently displayed on the vehicle, with siren and lights activated, and during the course of the fleeing or attempted elude:

> (a) Drives at high speed, or in a manner which demonstrates a wanton disregard for the safety of persons or property, commits a felony of the second degree, punishable as provided in §§ 775.082, 775.083, or 775.084.

§ 316.1935(3)(a), Fla. Stat. The factual allegations in the Information and the evidence adduced at trial track the language of this provision. See Resp. Ex. A at 18. However, the jury instruction for count two and the verdict form list the title of count two as "aggravated" fleeing to elude a law enforcement officer. See id. at 71, 89. "Aggravated" fleeing or eluding is a distinct and separate, first degree offense defined in section 316.1935(4)(b), Florida Statutes. Throughout the proceedings, the parties and the trial court repeated this incorrect title for count two; but the evidence presented at trial, the substance of the instruction read to the jury on count two, and the verdict form otherwise corresponded to the elements of the non-aggravated offense. See id. at 71, 89. Further, while Petitioner's written judgment and sentence again incorrectly used the term "aggravated" in the title of the crime, it cites to the correct statutory provision and degree of crime for the non-aggravated offense. See id. at 129. As such, despite the trial court's repeated use of "aggravated," it is clear that Petitioner was convicted and sentenced for the non-aggravated offense proscribed by section 316.1935(3)(a), Florida Statutes, as charged in the Information. Thus, Petitioner was not convicted of an uncharged crime. While the repeated use of the term "aggravated" was erroneous, in these circumstances it does not rise to the level of a constitutional violation justifying federal habeas relief. Ground One (G) is due to be denied.

### (Cumulative Effect of Ineffective Assistance of Counsel)

Petitioner maintains that the cumulative effect of trial counsel's ineffectiveness deprived him of a fair trial. Doc. 1 at 23. He raised this claim in his Rule 3.850 motion. Resp. Ex. K at 195. In addressing this issue, the trial court ruled as follows:

Lastly, Defendant argues that the cumulative effect of counsel's alleged errors justifies granting Defendant's Motion for Postconviction Relief. It is well-settled that a claim of cumulative error cannot stand in cases where, following individual evaluation, alleged errors are found to be without merit or procedurally barred. Lukehart v. State, 70 So. 3d 503, 524 (Fla. 2011); see Suggs v. State, 923 So. 2d 419, 442 (Fla. 2005) (holding that when a defendant does not successfully prove any of his individual claims and, consequently, counsel's performance is deemed sufficient, a claim of cumulative error must fail.); Parker v. State, 904 So. 2d 370, 380 (Fla. 2005) ("Because the alleged individual errors are without merit, the contention of cumulative error is similarly without merit."). Here, Defendant has not demonstrated that counsel was ineffective under Strickland in any of the ten grounds in the instant Motion. Defendant is not entitled to relief.

Resp. Ex. K at 248-49. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. N. To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

"The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005) (internal quotation marks omitted). The Eleventh Circuit addresses "claims of cumulative error by first considering the validity of each claim individually, and then examining any errors that [it] find[s] in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). Because the Court has determined that none of

Petitioner's individual claims of error or prejudice have merit, Petitioner's cumulative error claim cannot stand. See United States v. Taylor, 417 F.3d 1176, 1182 (11th Cir. 2005) ("[There being] no error in any of the district court's rulings, the argument that cumulative trial error requires that this Court reverse [the defendant's] convictions is without merit."). Accordingly, the Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner's claim of cumulative error is due to be denied.

## Ground Two

Petitioner argues that the state committed a Brady[13] violation by withholding Fisette's deposition testimony which would have served as valuable impeachment evidence. Doc. 1 at 25. He again contends that Fisette testified during his deposition that the incident occurred on 4th Street and gave an alternate description of the crime scene. Id.

Petitioner raised this claim as ground eight of his Rule 3.850 motion. Resp. Ex. K at 186-89. The trial court summarily denied the claim as follows:

> In Ground Eight, Defendant contends the State withheld exculpatory evidence in violation of Brady. Specifically, Defendant alleges Officer Fisette changed his testimony at trial to "better 'fit'" the State's version of events.

> To prevail on a Brady claim, a defendant must show "(1) the evidence at issue is favorable to the accused, either

---

[13] Brady v. Maryland, 373 U.S. 83 (1963).

because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) prejudice to the defendant has ensued." Archer v. State, 934 So. 2d 1187, 1202 (Fla. 2006). The burden is on the defendant to demonstrate the evidence satisfies each of these elements. Wright v. State, 857 So. 2d 861, 870 (Fla. 2003). In order to demonstrate prejudice, the evidence suppressed must have been material. Lightbourne v. State, 841 So. 2d 431, 437 (Fla. 2003). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.["] Jones v. State, 709 So. 2d 512, 519 (Fla. 1998) (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L.Ed.2d 481 (1985)). The mere possibility that undisclosed items or information may have been helpful to the defense in its own investigation does not establish the materiality of the information. Wright, 857 So. 2d at 870.

Here, Defendant argues the testimony itself qualifies as Brady material. As such, Defendant's Ground Eight is best raised as a claim alleging a violation of Giglio.[14] In fact, Defendant raises a substantially similar claim infra in Ground Nine. Moreover, counsel was present during Officer Fisette's deposition. As such, Defendant fails to demonstrate the State suppressed or withheld any material evidence. Defendant is not entitled to relief on Ground Eight.

Resp. Ex. K at 245-46. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. N. To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

To the extent that this deposition testimony amounts to evidence that would

---

[14] Giglio v. United States, 405 U.S. 150 (1972).

fall under the principles of <u>Brady</u>, the record supports the state court's conclusion that this did not amount to a <u>Brady</u> violation. To demonstrate a <u>Brady</u> violation, Petitioner must prove that (1) the government possessed evidence favorable to the defense; (2) Petitioner did not possess the evidence and could not have obtained it with any reasonable diligence; (3) the government suppressed the favorable evidence; and, (4) the evidence was material in that a reasonable probability exists that the outcome of the proceeding would have been different had the evidence been disclosed to the defense. <u>United States v. Neufeld</u>, 154 F. App'x 813, 818 (11th Cir. 2005) (citation omitted); <u>LeCroy v. Sec'y Fla. Dep't of Corr.</u>, 421 F.3d 1237, 1268 (11th Cir. 2005) (citation omitted); <u>Chandler v. Moore</u>, 240 F.3d 907, 915 (11th Cir. 2001) (citation omitted). The record is clear that trial counsel was present when Fisette conducted his deposition. Notably, during trial, trial counsel used Fisette's deposition testimony to impeach Fisette. Resp. Ex. C at 198, 199, 200-01, 206-07.  As such, Petitioner fails to demonstrate that Petitioner did not have possession of this evidence or that the state suppressed this evidence. He fails to demonstrate a <u>Brady</u> violation. Ground Two is due to be denied.

### Ground Three and Ground Four

In Ground Three, Petitioner argues that the state committed a <u>Giglio</u> violation by knowingly presenting false testimony from Fisette that the incident occurred on 3rd Street. Doc. 1 at 28. He again argues that Fisette testified during his deposition that the incident occurred on 4th Street, and the police report shows that the incident occurred on 4th Street. Petitioner contends that the state told Fisette to change his

38

testimony at trial, so that it better fit the state's theory of the case that Petitioner attempted to hit Fisette. In Ground Four, Petitioner argues that the prosecutor committed "fraud upon the court" by knowingly presenting false testimony that the crime occurred on 3rd Street and false crime scene photos to obtain Petitioner's conviction. Doc. 1 at 31.

Petitioner raised the allegations in Ground Three as ground nine of his Rule 3.850 motion. Resp. Ex. K at 189-92. The trial court denied the claim, finding in pertinent part:

> In Ground Nine, Defendant contends the State knowingly presented false testimony in violation of Giglio. Specifically, Defendant alleges Officer Fisette changed his testimony at trial to "better 'fit'" the State's version of events.
>
> To succeed on such a claim, the defendant must establish: (1) the prosecutor or witness gave false testimony (2) the prosecutor knew the testimony was false and (3) the statement was material. Marshall v. State, 854 So. 2d 1235, 1251-52 (Fla. 2003). False testimony is material if there is a reasonable likelihood it could have affected the jury's verdict. Ventura v. State, 794 So. 2d 553, 563 (Fla. 2001). To demonstrate willfully offered perjury, a defendant must show more than mere inconsistencies due to memory lapse, unintentional error, or oversight. Maharaj v. State, 778 So. 2d 944, 956 (Fla. 2000). "In the Giglio context, the suggestion that a statement may have been false is simply insufficient; the defendant. must conclusively show that the statement was actually false." Maharaj v. Sec'y for Dep't of Corr., 432 F.3d 1292, 1313 (11th Cir. 2005). Ambiguous testimony does not constitute false testimony. Davis v. State, 136 So. 3d 1169, 1186-87 (Fla. 2014) (citing Phillips v. State, 608 So. 2d 778, 781 (Fla. 1992)).
>
> As detailed supra in Grounds One and Six, the purportedly false testimony is nothing more than a minor oversight or unintentional error, easily and reasonably

explained by reviewing [ ] Officer Fisette's testimony as a whole and in context of the case. Contrary to Defendant's contention, Officer Fisette's testimony in deposition and at trial coincides with the photographic evidence offered by the State. Defendant contends the State engaged in a complex conspiracy with Officer Fisette to wrongfully prosecute and convict him. Defendant urges the Court to accept his conspiracy theory based substantially on the lone, minor discrepancy listing two different addresses as the location of the incident. However, Defendant fails to demonstrate any evidence of willfully offered perjury. Rather, Defendant supports his argument with nothing more than a minor oversight or unintentional error. Accordingly, the Court finds Defendant's conspiracy theory unreasonable and without merit. Accordingly, Defendant is not entitled to relief on Ground Nine.

Resp. Ex. K at 246-47. Petitioner raised the allegations of Ground Four in ground ten of his Rule 3.850 motion. See id. at 192-95. The trial court denied that issue as follows:

In Ground Ten, Defendant contends the State "committed fraud upon the Court by knowingly presenting false testimony and evidence at trial." Upon review, the Court finds this claim fails to raise any new issue or claim. Rather, Ground Ten merely repackages the same arguments and issues raised throughout his Motion. As such, the Court denies Defendant's Ground Ten for the reasons stated supra.

To the extent Defendant's Ground Ten raises additional claims of prosecutorial misconduct, these claims are procedurally barred. "[S]ubstantive claims of prosecutorial misconduct could and should have been raised on direct appeal and thus are procedurally barred from consideration in a postconviction motion." Spencer v. State, 842 So. 2d 52, 60 (Fla. 2003) (citing Smith v. State, 445 So. 2d 323, 325 (Fla. 1983)) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."); McCray v. State, 933 So. 2d 1226, 1227 (Fla. 1st DCA 2006). Defendant is not entitled to relief on Ground Ten.

Resp. Ex. K at 248. The First DCA per curiam affirmed the trial court's denial of these claims without a written opinion. Resp. Ex. N. To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address these claims in accordance with the deferential standard for federal court review of state court adjudications. Upon review of the record, this Court finds that the state court's adjudication of these claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Three and Ground Four are due to be denied.

### Ground Five

Petitioner alleges that the evidence was insufficient to establish a conviction for count two. Doc. 1 at 37-38. According to Petitioner, the state did not present any evidence that Petitioner (1) drove at a high rate of speed, or (2) drove in a manner which demonstrated a wanton disregard for the safety of persons or property. Id.

On direct appeal, Petitioner, with the benefit of counsel, filed an initial brief pursuant to Anders v. California, 386 U.S. 738 (1967), representing that no good faith argument of reversible error could be made. Resp. Ex. D. Petitioner then filed a pro se initial brief arguing that the trial court erred in failing to grant Petitioner's motion for judgment of acquittal as to count two, because the evidence was insufficient to establish the elements of fleeing or attempting to elude a law enforcement officer. Resp. Ex. E at 8. Thereafter, the First District Court of Appeal per curiam affirmed

Petitioner's conviction and sentence without a written opinion. <u>See</u> Resp. Ex. G. To the extent that the First DCA, in affirming Petitioner's conviction and sentence, denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

When reviewing an insufficiency of the evidence claim in a habeas petition, a federal court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). The court must assume that the jury resolved any evidentiary conflicts in favor of the prosecution, and the court must defer to that resolution. <u>Id.</u> To prove the charge of count two, the state was required to prove the following four elements: (1) Petitioner was operating a vehicle upon a street or highway; (2) Petitioner, knowing he had been directed to stop by a duly authorized law enforcement officer, willfully refused or failed to stop the vehicle in compliance with the order; (3) the law enforcement officer was in an authorized law enforcement patrol vehicle with agency insignia and other jurisdictional markings prominently displayed on the vehicle and with siren and lights activated; and (4) during the course of the fleeing or the attempt to elude, Petitioner drove at a high speed or in any manner demonstrating a wanton disregard for the safety of persons or property. Resp. Ex. A at 18-19; <u>see also</u> § 316.1935(3)(a), Fla. Stat.

Here, Petitioner only challenges the sufficiency of the evidence establishing the fourth element. However, Fisette testified that after he turned on his sirens and

attempted a "felony takedown," Petitioner refused his orders, turned his vehicle around, and accelerated "full throttle" in Fisette's direction. Resp. Ex. C at 176. Fisette explained that Petitioner's tires squealed as he accelerated and the car "kicked a huge cloud of dirt and debris up in the neighborhood." Id. at 180. According to Fisette, "[w]hen [Petitioner] exited the neighborhood, he was still driving very recklessly at a high rate of speed, did not slow for speed bumps." He went on to state that "[t]his is a public housing neighborhood. There are a lot of people out at all hours of the night. When he left the neighborhood, he ran that stop sign. He squealed his tires around the corner to go back onto Davis street" and "accelerated at a high rate of speed down Davis Street . . . ." Id. at 182-83. Taken in the light most favorable to the state, the Court finds there was sufficient evidence to permit a rational trier of fact to find Petitioner guilty of count two. As such, upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Five is due to be denied.

### Ground Six

Petitioner argues that he was denied his right to effective assistance of counsel when the trial court denied Petitioner's request to discharge his attorney during his pretrial Nelson[15] inquiry. Doc. 1 at 40-41.

---

[15] Nelson v. State, 274 So. 2d 256 (Fla. 4th DCA 1973).

Respondents allege, and the Court agrees, that this claim is not cognizable on federal habeas review. See Supp. Resp. at 15-17. "Any complaint about the lack of a proper Nelson inquiry raises an issue of state law that is not cognizable in this proceeding." Ortiz v. McNeil, No. 3:09-cv-563-J-12TEM, 2010 WL 4983599, at *5 (M.D. Fla. Dec. 2, 2010). The Court must be mindful that the purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States. See Coleman v. Thompson, 501 U.S. 722 (1991). This Court will not reexamine state court determinations on issues of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). The Court is bound by the Florida court's interpretation of its own laws unless that interpretation breaches a federal constitutional mandate. McCoy v. Newsome, 953 F.2d 1252, 1264 (11th Cir. 1992). Since this ground presents a state law claim concerning a ruling by the trial court after a Nelson inquiry, Petitioner is not entitled to federal habeas corpus relief as there has been no breach of a federal constitutional mandate. Consequently, Petitioner's claim raised in Ground Six is not cognizable in this habeas proceeding and is due to be denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1), including Petitioner's "Amended Page 10" (Doc. 5-1), is **DENIED** and this case is **DISMISSED with prejudice**.

2.     The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3.     If Petitioner appeals this denial, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[16]

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of January, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:     Bea J. Solomon, #I00080
        Bryan G. Jordan, Esq.

---

[16] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.